KEVIN L. FORTUNE,

      Petitioner,

v.                                  Case No. 8:16-cv-2357-T-02AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

      Kevin L. Fortune, a Florida prisoner, timely filed a *pro se* amended petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his Manatee County conviction. (Dkt. 9). Upon consideration of the amended petition, the Court ordered Respondent Secretary, Department of Corrections, to show cause why the relief sought in the amended petition should not be granted. (Dkt. 11). Respondent filed a response in opposition to the amended petition, along with the state court record. (Dkts. 17, 19). Mr. Fortune filed a reply. (Dkt. 22). Upon consideration, the amended petition will be denied.

## Background

      Mr. Fortune was convicted after a jury trial of one count of lewd or lascivious battery. (Dkt. 19, Ex. 1, p. 43). He received a sentence of 20 years in prison as a habitual felony offender, followed by five years of sex offender probation. (Dkt. 19, Ex. 1a, pp. 250-51). The state appellate court *per curiam* affirmed Mr. Fortune's conviction and sentence. (Dkt. 19, Ex. 4). Mr. Fortune filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and an amended motion. (Dkt. 19, Ex. 6). The state appellate court *per curiam* affirmed the postconviction court's

summary denial of relief. (Dkt. 19, Exs. 6, 9).

## Standard of Review

<u>AEDPA</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 413 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly

2

established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter,* 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the denial of Mr. Fortune's postconviction motion without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers,* 138 S.Ct. 1188, 1192 (2018).

Ineffective Assistance of Counsel

All of Mr. Fortune's claims allege ineffective assistance of trial counsel. Such claims are analyzed under the test announced in *Strickland v. Washington,* 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

A petitioner must demonstrate that counsel's alleged error prejudiced the defense because

"[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

## Discussion

Exhaustion of Mr. Fortune's Claims

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

Respondent suggests that Mr. Fortune's claims are unexhausted. When Mr. Fortune appealed the summary denial of his postconviction motion, he did not file an appellate brief. He was not required to do so under the applicable procedural rule. *See* Fla. R. App. P. 9.141(b)(2)(C)(i) ("Briefs are not required" if all postconviction claims have been summarily denied, "but the appellant may

serve an initial brief[.]"). After the state appellate court affirmed the denial of relief, Mr. Fortune filed a motion for rehearing in which he addressed his claims for relief. (Dkt. 19, Ex. 10). Asserting that Mr. Fortune "was barred under state procedural rules from raising his claims for the first time on rehearing," Respondent now "questions whether the claims were properly exhausted on appeal from the summary denial." (Dkt. 17, p. 19).

This Court finds that Mr. Fortune's failure to file an initial brief did not prevent him from exhausting the claims that he raised in his postconviction motion. He was not obligated to file a brief to properly present the claims to the state appellate court for review. That Mr. Fortune addressed the claims in a motion for rehearing filed after the state appellate court issued its decision does not change the conclusion that his claims were properly before that court for review in the first instance. Accordingly, Mr. Fortune exhausted the claims that he raised in his postconviction motion. *See Gardner v. Sec'y, Fla. Dep't of Corr.*, 2018 WL 1898756 at *5 n.3 (M.D. Fla. Apr. 20, 2018) (a petitioner who did not file an appellate brief following the summary denial of his postconviction motion "successfully exhausted his state court remedies" by appealing the denial).

However, Mr. Fortune's amended federal habeas petition raises several ineffective assistance claims that he did not present in his state postconviction motion. These claims are unexhausted. As Mr. Fortune cannot return to state court to raise the claims in an untimely, successive postconviction motion, *see* Fla. R. Crim. P. 3.850(b), they are now procedurally defaulted. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) ("If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default[.]"). These procedurally defaulted claims are barred from review unless Mr. Fortune establishes the applicability of an exception to overcome the default. *See id.* (a procedural default "will bar federal habeas relief, unless either the cause and

prejudice or the fundamental miscarriage of justice exception is established."). Each of Mr. Fortune's claims is addressed below.

Grounds One And Four

In Grounds One and Four, Mr. Fortune alleges that counsel was ineffective in his presentation of the defense at trial. The record shows that the victim, a girl who was 13 years old at the time of the offense, initially told police that another man, Michael Suza, was the perpetrator. During a medical examination, semen was found in the victim's vagina. DNA from the semen matched Mr. Fortune, not Mr. Suza.

At the start of trial, the prosecutor stated that he did not plan to call the victim. It appears that counsel considered calling the victim to bring out her initial identification of Mr. Suza and her alleged inconsistent statements during the investigation into Mr. Suza. (Dkt. 19, Ex. 1d, pp. 302-05). However, after the trial court ruled that these statements were inadmissible (Dkt. 19, Ex. 1c, pp. 154-60, 163-68), counsel decided not to call the victim.

The State's case focused on the DNA evidence. The State called Shana Hayter, a crime lab analyst at the Florida Department of Law Enforcement who performed the DNA testing. She testified that the DNA profile recovered from the victim, which matched Mr. Fortune, occurred with a frequency of 1 in 130 trillion African-Americans. (*Id.*, pp. 254-55).

A.    *Exhausted Claims*

In Ground One, Mr. Fortune alleges that trial counsel was ineffective for failing to depose or investigate the victim, and in not calling her at trial. In Grounds One and Four, Mr. Fortune

6

alleges that counsel was ineffective in not presenting a "credibility" defense.[1]  Mr. Fortune alleges

that the victim's testimony would have exonerated him.  Mr. Fortune claims that the victim would

have testified that he was not guilty, and suggests that she would have testified to planting the DNA

evidence on herself.  Alternatively, Mr. Fortune claims, counsel should have presented a "credibility"

defense by impeaching the victim's credibility through her alleged prior inconsistent statements and

calling witnesses to testify to his good character and credibility.  The state court denied these claims

when Mr. Fortune raised them in his postconviction motion:

> In Ground One, Defendant alleges that counsel was ineffective for failing to
> investigate or depose any witnesses prior to the day of trial. . . .
>
> According to Defendant, had counsel provided a more thorough investigation, "he
> would have been better prepared to proceed to trial and been able to make an
> informed decision on whether to call the victim as a defense witness, instead of being
> undecided right up to the time it became necessary for that decision to be made."
> Defendant concludes that counsel's "lack of preparation . . . prejudiced the defendant
> and contributed to defendant being convicted."  Defendant implies that the witnesses
> he instructed counsel to call were the basis for a "credibility defense," wherein
> evidence of Defendant's recent good moral behavior would be presented to the jury
> alongside the victim's inconsistent statements.
> . . .
>
> Defendant asserts that he instructed counsel to depose and call at trial T.W. (the
> victim), Phyllis and Marion Hill (Defendant's landlords), Donna Porter (Defendant's
> girlfriend), Sam Stewart (Defendant's addiction counselor), and Floyd Winters
> (Defendant's college professor).  The majority of these claims are legally insufficient
> and, as Defendant was previously afforded an opportunity to amend, now subject to
> denial with prejudice under Rule 3.850(f)(2) for his failure to provide legally
> sufficient amendments.  The Court will nevertheless address the claims on an
> individual basis to explain why Defendant's claims fail to demonstrate an entitlement
> to postconviction relief.
>
> T.W.

---

[1] Mr. Fortune's claims are interpreted as raising the same arguments concerning the victim and the credibility defense that he brought in grounds one and four of his postconviction motion.

Defendant implies that T.W.'s testimony would likely include an admission to lying in her original affidavit, which would have allowed counsel to point out inconsistencies in her version of events. He contends that this evidence of deception by the victim "would have opened the jurors to the possibility that the victim may have indeed planted the defendant's DNA herself to claim rape to divert attention from herself and her misdeeds, and curry sympathy."

As an initial matter, the Court finds Defendant's suggestion that a jury would have believed that the victim planted false evidence of a sex crime – specifically, Defendant's bodily fluids inside her own vagina – based on the victim's inconsistent or incomplete statements to police inherently incredible. *See Montero v. State*, 996 So. 2d 888 (Fla. 4th DCA 2008); *Evans v. State*, 843 So. 2d 938 (Fla. 3d DCA 2003). Additionally, the Court finds the claim regarding counsel's alleged failure to elicit exculpatory testimony from the victim too speculative and conclusory to warrant a hearing. Defendant fails to identify any admissible evidence indicating that the victim had access to a collection of his DNA for purposes of fabricating allegations against him. Moreover, Defendant fails to allege or demonstrate that the victim or any other witness would have offered testimony in support of his claim. In light of the DNA evidence presented at trial, testimony calling T.W.'s character or credibility into question would not have created a different outcome at trial. Ultimately, Defendant fails to show that the absence of T.W.'s testimony resulted in prejudice that affected the result of the proceedings.

(Dkt. 19, Ex. 6, pp. 24-26).

The state court then addressed the five other witnesses whom Mr. Fortune argued would have contributed to a credibility defense by offering testimony about Mr. Fortune's character. The state court concluded that any such testimony was not permissible under Florida law. Citing *Pino v. Koelber*, 389 So.2d 1191, 1193 (Fla. 2d DCA 1980), the state court found that evidence of a defendant's general good character is inadmissible. (*Id.*, pp. 27-29). The state court continued:

Defendant claims that counsel was ineffective when he failed to develop a defense after learning that the State would not call the victim at trial. Defendant alleges that this failure was inherently prejudicial. Defendant states that a suitable alternative defense would have been a "credibility defense," used to attack the victim's inconsistent statements and to show Defendant's good character.

This claim is legally insufficient, as Defendant fails to present a viable alternative defense explaining to the Court what counsel might have done differently. As

mentioned above . . . , the prospective testimony that Defendant would offer in order to establish a credibility defense is largely inadmissible as irrelevant character evidence. . . .

Defendant also fails to explain how counsel's insufficiency in presenting a "credibility defense" resulted in prejudice as contemplated in *Strickland*. In the face of DNA evidence that establishes the frequency of the perpetrator's DNA profile as one in 130 trillion among African-Americans, proof of Defendant's good character, even if admitted, fails to give rise to a reasonable probability that the outcome of the proceedings would have been different. Therefore, the Court finds Defendant's claim of prejudice presented in Ground Four legally insufficient.

(Dkt. 19, Ex. 6, p. 31) (court's record citation omitted).

Mr. Fortune has not established that his counsel was ineffective in his pre-trial investigation of the victim or in his decision not to call her at trial because Mr. Fortune has not presented any evidence that the victim would have testified as he suggests. *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.").[2] *Accord United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

Therefore, Mr. Fortune's claim is too speculative to warrant federal habeas relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the

---

[2] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit).

burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985)); *see also Small v. Fla. Dep't of Corr.*, 470 Fed. App'x 808, 812 (11th Cir. 2012) (a federal habeas petitioner failed to establish a claim under *Strickland* when he did not show, "beyond his own conclusory statements, . . . that [the witness] would have favorably testified.").

Additionally, the state court found that the evidence Mr. Fortune claims counsel should have presented to support a "credibility" defense would not have been admissible under Florida evidentiary law. While Mr. Fortune's ineffective assistance claim is a federal constitutional claim, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . [a federal court] must defer to the state's construction of its own law." *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)); *see Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) (noting that it is a "fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters."). Further, as addressed, the trial court ruled inadmissible evidence about the victim's alleged prior inconsistent statements in connection with the investigation into Mr. Suza. Accordingly, Mr. Fortune fails to show that counsel performed deficiently in not presenting a credibility defense.

Moreover, as the state court found, Mr. Fortune has not established prejudice as a result of counsel's actions. Even assuming counsel presented the witnesses and arguments that Mr. Fortune says he should have, Mr. Fortune has not shown a reasonable probability of a different outcome at trial given the strength of the DNA evidence. Accordingly, Mr. Fortune has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claims.

B.  *Unexhausted Claims*

Within Ground One, Mr. Fortune claims that counsel's failure to call the victim resulted in a Confrontation Clause violation because he "was not given his right to confront his accuser." (Dkt. 9, p. 4). Mr. Fortune's claim is unexhausted because he did not present it in his state postconviction motion. (Dkt. 19, Ex. 6, pp. 1-19). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. Fortune's reply cites *Martinez v. Ryan*, 566 U.S. 1 (2012). In recognizing a narrow exception to the rule that an attorney's errors in a postconviction proceeding do not constitute cause for a procedural default, *Martinez* holds:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 17.

To establish cause under *Martinez*, Mr. Fortune must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Id.* at 14. A claim that does not have any merit or that is wholly without factual support is not substantial. *See id.* at 15-16. *See also Allen v. Sec'y, Dep't of Corr.*, 767 Fed. App'x 786, 790 (11th Cir. 2019) ("[T]o show that an underlying claim is substantial, the petitioner must show that reasonable jurists would debate its merits." (citing *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014))).

Mr. Fortune has not shown that his claim is substantial. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. But no Confrontation

Clause violation occurs when the witness in question did not provide evidence at trial. *See Shuler v. Wainwright*, 491 F.2d 1213, 1224 (5th Cir. 1974) ("The Confrontation Clause of the Sixth Amendment applies to evidence actually disclosed at trial and a defendant has no right to confront a 'witness' who provides no evidence at the trial.") (citation omitted).

Here, the victim did not provide any evidence at trial. She did not testify, nor did the prosecution present her statements through its witnesses. *See United States v. Napolis*, ___ Fed. App'x. ___, 2019 WL 2120806 at *2 (11th Cir. May 14, 2019) (a defendant had no constitutional right to confront a confidential informant when the informant "neither testified at trial nor was quoted as a hearsay declarant . . ."). Further, Mr. Fortune was permitted to cross-examine all of the State's witnesses. Because Mr. Fortune has not demonstrated that his trial counsel's performance resulted in a Confrontation Clause violation, he has not shown that his claim is "substantial" under *Martinez*. Consequently, the cause and prejudice exception does not apply to excuse the default of this claim. Mr. Fortune does not argue or demonstrate that the fundamental miscarriage of justice exception applies to excuse the default. Therefore, this claim is barred from federal habeas review.

Within Ground Four, Mr. Fortune asserts that "Fla. Stat. 794.01 states in pertinent part that proof of penetration is mandatory for a conviction. And the fact that a sample of semen may have been found in the victim does not prove penetration." (Dkt. 9, p. 14). He also claims that "proof of penetration cannot be found without either of the two parties admission and/or confession." (*Id.*). Thus, Mr. Fortune appears to contend that counsel was ineffective in failing to discover and advance the defense that the State could not prove penetration, as needed to sustain a conviction, without the victim's testimony.

This claim is unexhausted due to Mr. Fortune's failure to raise it in his postconviction motion

12

(Dkt. 19, Ex. 6, pp. 1-19), and is now procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr.

Fortune has not established that his ineffective assistance claim is substantial under *Martinez*. Mr.

Fortune was charged with lewd or lascivious battery under § 800.04(4)(a), Fla. Stat. (Dkt. 19, Ex.

1, p. 12).[3] This section provides that a person commits lewd or lascivious battery by "[e]ngaging in

sexual activity with a person 12 years of age or older but less than 16 years of age." "Sexual

activity" is defined, in relevant part, as "the . . . vaginal penetration by, or union with, the sexual

organ of another or . . . by any other object." § 800.04(1)(a), Fla. Stat. Accordingly, at trial, the

State had to prove beyond a reasonable doubt that Mr. Fortune either "committed an act upon [the

victim] in which the sexual organ of [Mr.] Fortune penetrated or had union with the vagina of [the

victim], or . . . committed an act upon [the victim] in which the vagina of [the victim] was penetrated

by an object." (Dkt. 19, Ex. 1, p. 34).

In moving for a judgment of acquittal, counsel argued that the State had failed to prove lewd

or lascivious battery because none of the State's witnesses had knowledge that Mr. Fortune

committed any such act. (Dkt. 19, Ex. 1c, pp. 277-78). Counsel also argued to the jury that the State

had failed to present any evidence that Mr. Fortune committed an act. (Dkt. 19, Ex. 1d, pp. 363-65,

369). Mr. Fortune fails to show that counsel was ineffective in not more specifically arguing that

the State could not prove an act without the victim's testimony. The victim's testimony was not

required because the State could prove its case through circumstantial evidence. *See Borders v.*

*State*, 312 So.2d 247, 248 (Fla. 3d DCA 1975) ("A person charged with a crime may be convicted

---

[3] Mr. Fortune mentions § 794.01, Fla. Stat., in raising this claim. It appears that he intends to cite § 794.011, Fla. Stat., the sexual battery statute. *See Gutierrez v. State*, 177 So.3d 226, 229 (Fla. 2015) (stating that the Florida Legislature repealed § 794.01, Fla. Stat., and enacted § 794.011, Fla. Stat.). However, as he was charged under a different statute, Mr. Fortune has not established the relevancy of § 794.011, Fla. Stat. to his case.

solely on the basis of circumstantial evidence."). Because Mr. Fortune has not shown that his defaulted claim of ineffective assistance is substantial under *Martinez*, he does not establish the cause and prejudice exception to excuse the default of that claim. Nor does he establish that the fundamental miscarriage of justice exception applies to excuse the default. Accordingly, Mr. Fortune's claim is barred from federal habeas review. He is not entitled to relief on Ground One or Ground Four.

<u>Ground Two</u>

The venire panel was sworn before entering the courtroom for jury selection. (Dkt. 19, Ex. 1b, p. 16 ). Stating that he was entitled to be present for all "critical stages" of the trial under Florida Rule of Criminal Procedure 3.180, Mr. Fortune alleges that counsel was ineffective for not objecting to the venire panel's being sworn outside his presence. (Dkt. 9, p. 8). Mr. Fortune also argues that counsel was ineffective in failing to ensure that the venire panel's oath complied with Florida Rule of Criminal Procedure 3.300, which sets forth the language of the oath. (*Id.*).

The state court denied Mr. Fortune's claims:

> Defendant claims that counsel was ineffective for failing "to request that the jury be sworn on the voir dire as required by Rule 3.300, Fla. R. Crim. P., or in the Defendant's presence as mandated by Rule 3.180, Fla. R. Crim. P." According to Defendant, counsel's failure to object to the jury being sworn in the juror assembly room prior to *voir dire* resulted in prejudice "where the issue was not preserved for appellate review."

> As an initial matter, the Court finds that Defendant has not properly alleged prejudice, as he fails to prove that the presumed omissions undermined the fairness and reliability of the proceeding. *See Martin v. State*, 816 So. 2d 187, 188 (Fla. 5th DCA 2002) *cause dismissed*, 823 So. 2d 124 (Fla. 2002) and *cause dismissed*, 835 So. 2d 267 (Fla. 2002) (indicating that a preserved violation of Rule 3.300 is corrected by allowing the State to supplement the record). Nevertheless, Ground Two will be denied because:

> Rule 3.300(a) does not require that the preliminary oath be given at a particular time or that it be given more than once. If the jurors have taken the oath in the jury assembly room, they need not take it again in the courtroom.

*Lott v. State*, 826 So. 2d 457, 458 (Fla. 1st DCA 2002). As reflected in the trial transcript, and acknowledged in Defendant's motion, the venire in this case was sworn outside of the courtroom prior to *voir dire*. The trial transcript further reflects that the jury was impaneled and sworn in Defendant's presence at the conclusion of jury selection, in accordance with Rule 3.180(a)(4). As such, Defendant fails to identify any objectionable violation of either Rule 3.180 or Rule 3.300.

(Dkt. 19, Ex. 6, pp. 29-30) (court's record citations omitted).

Mr. Fortune has not established entitlement to relief. The state court's ruling rests on an application of Florida law to which this Court must defer. *Will*, 278 Fed. App'x at 908. In addition, counsel is not ineffective for failing to preserve a claim that is without merit. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (noting that counsel did not provide ineffective assistance when counsel failed to preserve or argue a meritless issue). Accordingly, Mr. Fortune has not established that counsel was ineffective for not objecting. Because Mr. Fortune does not demonstrate that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts, he is not entitled to relief on Ground Two.

Ground Three

A. *Exhausted Claims*

During *voir dire*, counsel addressed whether the prospective jurors wanted Mr. Fortune to testify, and asked whether they would hold it against him if he did not testify. Counsel made a list of 12 prospective jurors who said that they would hold Mr. Fortune's decision not to testify against him. (Dkt. 19, Ex. 1b, p. 103). Mr. Fortune argues that counsel was ineffective in asking this question because it led the entire venire panel to expect his testimony, and as a result, his decision

"to remain silent was turned against him[.]" (Dkt. 9, p. 12).

In addressing jury selection, Mr. Fortune also contends that the entire venire panel was white, and that counsel's performance resulted in a denial of equal protection. The Court interprets this as a claim that counsel was ineffective in not objecting based on the venire panel's racial composition.[4]

The state court denied Mr. Fortune's claims:

> In Ground Three, Defendant claims that trial counsel was ineffective for eliciting a response during *voir dire* "that would require the Defendant to give up his Fifth Amendment right to remain silent." Counsel asked the pool of prospective jurors if anyone would "hold [it] against him" if Defendant chose not to testify; many of the prospective jurors raised their hand in the affirmative. Defendant asserts this created a situation where "the jury would automatically conclude that [Defendant's silence] was an admission of guilt."

> "'[A] juror must be excused for cause if any reasonable doubt exists as to whether the juror possesses an impartial state of mind.'" *Caldwell v. State*, 50 So. 3d 1234, 1237 (Fla. 2d DCA 2011) (quoting *Overton v. State*, 801 So. 2d 877, 890 (Fla. 2001)). In the instant case, a record was made of the names of the prospective jurors who indicated that the Defendant's decision not to testify would have a negative impact on their decision when reaching a judgment; none of those prospective jurors served on the jury in this case. As such, Defendant's claim of prejudice is unsubstantiated.

> Defendant also mentions in his Memorandum of Law that while he is black, the entire panel of prospective jurors was white. Defendant stops short of alleging racial discrimination in the jury selection process, but seems to suggest that there was the possibility of racial bias. However, Defendant acknowledges that "[n]o one is entitled to a jury of any particular composition." *State v. Neil*, 457 So. 2d 481, 487 (Fla. 1984). Therefore, counsel was under no obligation to try to "produce a more race neutral jury panel" by moving to disqualify the existing pool of prospective jurors. Ultimately, the Court finds the Defendant's claims of prejudice in Ground

---

[4] To the extent Mr. Fortune may intend to raise a substantive equal protection claim, Respondent correctly contends that such a claim is unexhausted due to Mr. Fortune's failure to raise it in state court, and is now procedurally defaulted. (Dkt. 19, Ex. 2; Dkt. 19, Ex. 6, pp. 1-19). Mr. Fortune has not established that an exception applies to overcome the default. While Mr. Fortune mentions *Martinez* in his reply, *Martinez* only applies to defaulted claims of ineffective assistance of trial counsel. *See Luciano v. Sec'y, Dep't of Corr.*, 701 Fed. App'x 792, 794 (11th Cir. 2017) ("We have repeatedly underscored *Martinez*'s narrow scope, and emphasized that *Martinez* applies only to excusing a procedural default of ineffective-trial-counsel claims." (citing *Chavez v. Sec'y, Florida Dep't of Corr.*, 742 F.3d 940, 945 (11th Cir. 2014))). Accordingly, any substantive equal protection claim is barred from federal habeas review.

16

Three legally insufficient.

(Dkt. 19, Ex. 6, p. 30) (court's record citation omitted).

"The constitutional standard of fairness requires that the criminally accused have a panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799 (1975). "The purpose of a voir dire is to ascertain whether a potential juror can render a verdict solely on the basis of the evidence presented and the charge of the trial court." *Wilcox v. Ford*, 813 F.2d 1140, 1150 (11th Cir. 1987). A criminal defendant is entitled to effective assistance of counsel during *voir dire. See Brown v. Jones*, 255 F.3d 1273, 1279-80 (11th Cir. 2001).

The state court did not unreasonably apply *Strickland*'s prejudice prong in denying Mr. Fortune's claim that counsel was ineffective in questioning the venire panel. A review of the record confirms that none of the prospective jurors who said they would hold Mr. Fortune's not testifying against him served on the jury. (Dkt. 19, Ex. 1b, p. 103; Dkt. 19, Ex. 1d, p. 391).[5] Accordingly, Mr. Fortune does not establish that he was prejudiced as a result of counsel's performance. *See Rogers v. McMullen*, 673 F.2d 1185, 1190 (11th Cir. 1982) (a habeas petitioner is entitled to relief "only upon a showing that the juror was actually biased," and a juror is actually biased when the juror is "not capable and willing to decide the case solely on the facts before" him or her) (internal quotation and citation omitted).[6]

---

[5] Additionally, the trial court instructed the jurors that they must not be influenced "in any way" by Mr. Fortune's decision not to testify. (Dkt. 19, Ex. 1d, p. 383). Jurors are presumed to follow the court's instructions. *Hallford v. Culver*, 459 F.3d 1193, 1204 (11th Cir. 2006).

[6] Respondent points out that Mr. Fortune states for the first time in his amended habeas petition that counsel blamed his decision to ask this question on the venire panel's racial makeup. Mr. Fortune cannot present a new factual allegation in support of his ineffective assistance claim in his amended petition. *See Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). But even if this allegation was properly raised, it would not entitle Mr. Fortune to relief because he has failed to establish prejudice under *Strickland* for the reasons addressed in the body of this Order.

Nor did the state court unreasonably deny Mr. Fortune's construed claim that counsel was ineffective in not objecting to potential racial bias in the jury selection process. The Supreme Court has held that "petit juries must be drawn from a source fairly representative of the community [although] we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). The Supreme Court later announced a three-part test for establishing a *prima facie* violation of *Taylor*'s fair cross-section requirement. A petitioner must demonstrate:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). "If a defendant cannot establish any one of these elements, his claim under the Sixth Amendment fails." *United States v. Pritt*, 458 Fed. App'x 795, 797 (11th Cir. 2012) (citing *United States v. Pepe*, 747 F.2d 632, 649 (11th Cir. 1984)). Mr. Fortune does not show that any distinctive group was systematically excluded from the jury selection process in Manatee County or that any distinctive group's representation on venire panels in Manatee County was not fair and reasonable in relation to the number of group members in the community. Accordingly, Mr. Fortune cannot demonstrate that counsel had any basis to object to the venire panel's composition or that he was prejudiced by counsel's performance. Mr. Fortune has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination.

B. *Unexhausted Claim*

Mr. Fortune alleges that counsel was ineffective "in failing to challenge a juror and strike said

juror not attempting to rehabilitate the juror." (Dkt. 9, p. 11). This appears to be a new, unexhausted claim of ineffective assistance that Mr. Fortune did not expressly raise in his postconviction motion. (Dkt. 19, Ex. 6, pp. 1-19). This claim is now procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. Fortune has not established cause to excuse the default under *Martinez* because this claim is not substantial. Mr. Fortune does not identify any prospective juror whom he believes counsel should have stricken, set forth a basis upon which counsel should have moved to strike any prospective juror, or allege facts showing prejudice as a result of counsel's performance. Accordingly, this claim is insubstantial. *See Hittson*, 759 F.3d at 1271 ("Because Hittson has not alleged any facts to warrant a finding of *Strickland* prejudice, his . . . claim is not 'substantial'" under *Martinez*); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (a petitioner's vague and conclusory statements, unsupported by specific facts, cannot sustain an ineffective assistance claim). Mr. Fortune does not argue or show that the fundamental miscarriage of justice exception applies. As Mr. Fortune has not established an exception to overcome the procedural default, this claim is barred from federal habeas review. Mr. Fortune is not entitled to relief on Ground Three.

Ground Five

As addressed, the State called Shana Hayter, the crime lab analyst who performed the DNA analysis. Asserting that the DNA samples might have been contaminated, Mr. Fortune argues that counsel was ineffective in not retaining a defense expert to "refute" the procedures used by Ms. Hayter. (Dkt. 9, pp. 17-18). Mr. Fortune also argues that counsel should have moved for a hearing under *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) to determine the admissibility of Ms. Hayter's testimony. *See Branch v. State*, 952 So.2d 470, 482-83 (Fla. 2006) (explaining that Florida used the *Frye* standard, under which "an expert scientific opinion must be based on techniques that

19

have been generally accepted by the relevant scientific community and have been found to be

reliable" to be admissible).

The state court denied Mr. Fortune's claims:

> In Ground Five, Defendant claims that counsel was ineffective for failing to seek a DNA expert to refute the testimony presented by the State's DNA expert. Defendant adds that counsel was ineffective for failing to request that the Court conduct a *Frye* hearing. *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). Defendant speculates that the sample obtained from the victim "may have been contaminated," and submits that a *Frye* hearing "may have excluded the DNA evidence that was the proximate cause of the defendant being arrested on the charges before the court." However, "mere speculation that counsel's error affected the outcome of the proceeding is insufficient." *State v. Dickson*, 89 So. 3d 277, 279 (Fla. 1st DCA 2012) (quoting *Strickland*, 466 U.S. at 693).

> Defendant asserts that because another man named Michael Suza sexually assaulted the victim, and because both the victim and Michael Suza concede that they had sexual intercourse at some time before the collection of the DNA sample, the DNA evidence could have been tainted. However, Defendant fails to explain how testimony from a different expert regarding the DNA evidence obtained from the victim would have cast doubt on the incriminating evidence presented at trial. Specifically, it is unclear how the presence of additional DNA from Michael Suza would have negated or invalidated evidence of Defendant's DNA within the victim's vagina. Defendant asserts that counsel should have found an expert to "refute the methodology used to identify the defendant as a suspect" but fails to identify specific exonerating testimony that counsel could or should have elicited from an expert witness. *Terrell v. State*, 9 So. 3d 1284 (Fla. 4th DCA 2009).

> Furthermore, the Defendant presents no basis to challenge the qualification of the State's DNA expert. Defendant argues that the procedures used in the instant case may not have complied with the "normal technique of making [ ]identifications" based on DNA evidence. This claim is legally insufficient as it fails to allege a basis for questioning the expert's conduct and methodology.

> Defendant states that counsel should have requested a *Frye* hearing, however " . . . *Frye* is utilized in Florida only when the science at issue is new or novel." *Branch v. State*, 952 So. 2d 470, 483 (Fla. 2006). "[W]here a scientific principle has been established and generally accepted in the relevant scientific community, and has also been Frye tested in the legal community, it is no longer new or novel and there is simply no need to reapply a *Frye* analysis." *Dirling v. Sarasota County Gov't*, 871 So. 2d 303, 305 (Fla. 1st DCA 2004) (quoting *Williams v. State*, 710 So. 2d 24, 30-31

(Fla. 3d DCA 1998)). Properly conducted DNA testing has been consistently held to satisfy the *Frye* test. *Hayes v. State*, 660 So. 2d 257, 264 (Fla. 1995); *Zack v. State*, 911 So.2d 1190, FN3 (Fla. 2005); *Lemour v. State*, 802 So.2d 402, 405 (Fla. 2d DCA 2001). Statistical analysis of DNA test results also meets the *Frye* test. *See Brim v. State*, 799 So. 2d 427, 428-429 (Fla. 2d DCA 2000). Testimony given at trial described the methods and procedures used to test the DNA evidence, as well as those used to prevent contamination. Defendant fails to demonstrate that the techniques used were either new or novel, or that there is a ground to suggest that the techniques used to process the DNA evidence fell outside of the procedures currently accepted by the relevant scientific community. Accordingly, the Court will deny Ground Five.

(Dkt. 19, Ex. 6, pp. 31-33) (court's record citation omitted).

Mr. Fortune has not established that the state court's decision was unreasonable. His claim that counsel was ineffective in failing to retain an expert is too speculative to warrant relief. Mr. Fortune only theorizes that the DNA samples might have been contaminated. *See Tejada*, 941 F.2d at 1559. Further, he does not provide any evidence that a defense expert would have testified that the DNA analysis was subject to challenge. *See Johnson*, 256 F.3d at 1187.

Further, this Court must defer to the state court's finding that, in Florida, DNA testing satisfies the *Frye* standard. *See Will*, 278 Fed. App'x at 908. Accordingly, Mr. Fortune fails to establish that counsel had a good-faith basis to seek a *Frye* hearing, or a reasonable probability of a different outcome had counsel made such a request.[7] Mr. Fortune has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable

---

[7] Mr. Fortune now states in his reply that counsel should have sought a *Frye* hearing because "the product rule" method, which Ms. Hayter testified is used to calculate population frequencies, is not reliable. Mr. Fortune is barred from bringing a new claim in his reply. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Notwithstanding this bar, the claim is unexhausted because Mr. Fortune did not present it in his postconviction motion (Dkt. 19, Ex. 6, pp. 1-19), and it is now procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. Fortune cannot establish the cause and prejudice exception to excuse the default under *Martinez* because this ineffective assistance claim is not substantial. *See Thomas v. State*, 22 So.3d 626, 626 (Fla. 1st DCA 2009) ("[T]he product rule . . . has been recognized in Florida as a generally accepted method of DNA calculations." (citing *Butler v. State*, 842 So.2d 817, 829 (Fla. 2003))). Mr. Fortune does not establish that the fundamental miscarriage of justice exception applies. Therefore, even if this claim was properly raised in Mr. Fortune's federal habeas proceeding, it would be barred from review.

factual determination. He is not entitled to relief on Ground Five.

Ground Six

Counsel wanted to inform the jury that Mr. Suza was originally identified as a suspect. Accordingly, on cross-examination, counsel elicited Ms. Hayter's testimony that she was initially asked to compare the DNA recovered from the victim with a DNA sample from Mr. Suza. (Dkt. 19, Ex. 1c, p. 267). On redirect examination, the State elicited Ms. Hayter's testimony that Mr. Suza's DNA profile was excluded as the source of the recovered DNA, which was then placed in a database and found to match Mr. Fortune. (*Id.*, pp. 274-75).

Mr. Fortune argues that counsel was ineffective in his cross-examination of Ms. Hayter. He claims that, because counsel was not prepared to question Ms. Hayter, counsel opened the door for Ms. Hayter's testimony on redirect. The state court denied Mr. Fortune's ineffective assistance claim:

> In Ground Six, Defendant claims that counsel was ineffective for failing to depose the State's DNA expert. According to Defendant, if counsel had conducted a pretrial deposition on this witness, he never would have opened the door during cross-examination to testimony regarding the exclusion of Michael Suza as the possible source for the DNA evidence obtained from the victim. However, this Court finds that counsel's failure to depose the State's DNA expert did not prejudice the outcome of this case.
>
> Though Defendant asserts that counsel's error resulted in the exclusion of other possible suspects, in particular Michael Suza, as a source for the DNA recovered from the victim, the Court notes that the State presented evidence indicating the frequency of the DNA profile involved in this case as one in 130 trillion among African-Americans. In other words, with the exception of the Defendant, the State's evidence excluded the entire population of the world many times over. Defendant fails to demonstrate how testimony regarding the exclusion of a specific suspect made any different to the outcome of this case.

(Dkt. 19, Ex. 6, pp. 33-34) (court's record citations omitted).

The state court did not unreasonably deny Mr. Fortune's claim on *Strickland*'s prejudice prong. Even if the jury had not heard the identified portion of Ms. Hayter's testimony, Mr. Fortune has not established a reasonable probability that the outcome of trial would have been different given the State's evidence that the recovered DNA matched Mr. Fortune. Mr. Fortune has not shown that the state court's order involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. He is not entitled to relief on Ground Six.

Ground Seven

Mr. Fortune argues that trial counsel was ineffective in misadvising him about testifying at trial. He claims that counsel erroneously told him that he could not testify, and that if he did, the prosecution could "bring up" his past criminal history. (Dkt. 9, p. 22). Mr. Fortune further contends that counsel's advice not to testify was unsound because it was clear that the jury wanted him to testify. The state court denied Mr. Fortune's claim:

> In Ground Seven, Defendant claims that counsel was ineffective for misadvising him to remain silent instead of taking the witness stand at trial. A review of the trial transcript indicates that Defendant was aware of his right to testify and, after engaging in a colloquy with the Court regarding that right, voluntarily waived it on the record.
>
> . . .
>
> Defendant maintains in his "Amended Motion for Post Conviction Relief" that had he taken the stand he would have denied the charges and further suggests that he may have offered an explanation of how his DNA arrived in the victim's vagina. However, Defendant's motion does not sufficiently set forth what testimony he would have presented to refute the DNA evidence presented in this case. *See LaTulip v. State*, 645 So. 2d 552, 553 (Fla. 2d DCA 1994) (allegation that testimony would refute inculpatory evidence established prima facie postconviction claim). Defendant also fails to adequately explain how the absence of his prospective testimony resulted in prejudice. *See Trujillo v. State*, 991 So. 2d 1006, 1007 (Fla. 2d DCA 2008); *Oisorio v. State*, 676 So. 2d 1363, 1365 (Fla. 1996).
>
> In conclusion, with respect to Ground Seven, the Court finds that Defendant failed

to demonstrate that ineffective assistance of counsel resulted in an involuntary waiver of his right to testify at trial. Moreover, the claim presented in Ground Seven is legally insufficient for Defendant's failure to demonstrate a reasonable probability that had he testified, the outcome of the proceedings would have been different.

(Dkt. 19, Ex. 6, pp. 35-36) (court's record citation omitted).

A criminal defendant has a fundamental constitutional right to testify at trial. *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." *United States v. Teague*, 953 F.2d 1525, 1533 (11th Cir. 1992); *see also Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999) (holding that ineffective assistance occurs when (1) counsel refuses to honor a defendant's decision to testify or (2) counsel fails to inform a defendant that he has a right to testify and that the final decision whether to testify is the defendant's alone). "Where the defendant claims a violation of his right to testify by defense counsel, the essence of the claim is that the action or inaction of the attorney deprived the defendant of the ability to choose whether or not to testify in his own behalf." *Teague*, 953 F.2d at 1534.

The state court did not unreasonably deny this claim. Mr. Fortune told the trial court that he voluntarily decided not to testify because he believed it was in his best interest. (Dkt. 19, Ex. 1d, p. 334). Mr. Fortune also stated that he understood he had the right to testify even if his attorneys believed that he should not testify, and that he understood whether to testify was his personal choice. (*Id.*, p. 333). Mr. Fortune has not established that counsel misadvised him such that he could not make an informed decision, or that counsel prevented him from testifying.

Moreover, Mr. Fortune does not establish that he was prejudiced as a result of counsel's

performance, as the state court found. Mr. Fortune did not specify what he would have testified to, or how such testimony would have affected the outcome of trial. Mr. Fortune vaguely suggested that he could have testified how the victim might have come into contact with his DNA. (Dkt. 19, Ex. 6, p. 15). In the absence of more specific factual allegations, and considering the State's evidence of guilt, Mr. Fortune does not establish a reasonable probability of a different outcome even if he had testified. *See Tejada*, 941 F.2d at 1559. *See also Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (a federal court may not grant habeas relief "on the basis of little more than speculation with slight support."). Because Mr. Fortune does not demonstrate that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Seven.

Accordingly, it is **ORDERED** that:

1. The amended petition for writ of habeas corpus (Dkt. 9) is **DENIED**.

2. The Clerk shall enter judgment accordingly and is directed to close this case.

3. Mr. Fortune is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Mr. Fortune "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation omitted), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Mr. Fortune has not made the requisite showing. Because Mr. Fortune is not entitled to

a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** at Tampa, Florida, on _____, 2019.

_____
WILLIAM F. JUNG
United States District Judge

Kevin L. Fortune
Counsel of Record